UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 13-22476-CIV-COHN/SELTZER

LAW OFFICES LA LEY con JOHN H.
RUIZ, P.A., and JOHN H. RUIZ, P.A.,

    Plaintiffs,

v.

JOHN DOE BORROWERS and/or
MORTGAGORS ENTITLED TO
IFR PAYMENTS FROM RUST
CONSULTING, and/or OCC and/or
FEDERAL RESERVE BOARD,

    Defendants.
_____/

## ORDER DENYING PLAINTIFFS' MOTION FOR REMAND

**THIS CAUSE** is before the Court upon Plaintiffs' Motion for Remand and for Expedited Determination No Later than July 17, 2013 [DE 7].  The Court has considered the motion, the response [DE 13] filed by Defendants Office of the Comptroller of the Currency ("OCC") and Board of Governors of the Federal Reserve System (together, "Federal Defendants"), Plaintiffs' reply [DE 17], the record in this case, and is otherwise fully advised in the premises.

### I. BACKGROUND

Between April 2011 and February 2013, the Federal Defendants, acting pursuant to 28 U.S.C. § 1818(b), issued administrative cease-and-desist orders, as well as subsequent amendments to those orders (together, "the Consent Orders"), to a group of mortgage servicing companies as a result of deficiencies in the companies'

loan servicing and foreclosure practices.  See DE 1-2 at 5-6; DE 13 at 3.  The Consent Orders required servicers to engage an independent firm to conduct a review of foreclosure actions between January 1, 2009 and December 31, 2010.  DE 1-2 at 5-6. The orders also require servicers to establish a process for eligible borrowers who believe they have been financially harmed by the servicers to request an independent review of their files to be considered for remediation.  Id. at 6.  These processes together are known as the Independent Foreclosure Review ("IFR").  Id.

Ten of the servicing companies subject to the Consent Orders reached an agreement with the Federal Defendants to pay more than $8.5 billion in assistance to help eligible borrowers.  This amount included a Qualified Settlement Fund ("QSF") of more than $3 billion for direct payments to borrowers.  See id.; DE 7 at 3.  The Federal Defendants appointed Defendant Rust Consulting ("Rust") as paying agent under the IFR.  Rust is responsible for remitting payments to borrowers at the direction of the Federal Defendants.  DE 1 at 4; DE 1-2 at 7.

According to the pleading, Plaintiffs, the Law Offices La Ley con John H. Ruiz, P.A., and John H. Ruiz, P.A., have, throughout the past five years, represented thousands of individual eligible borrowers who have sued or been sued in foreclosure-related actions.  See DE 1-2 at 3; DE 7-1 ¶ 5.  Plaintiffs allege that each of its clients entered into an identical retainer agreement which provided that:

> Client agrees to pay the greater of 25% of any recovery after filing suit, or the contractual, statutory fees or common law remedy awarded by court or agreed to with any person or entity sued, inclusive of any lodestar multiplier awarded by the court.  Furthermore, JOHN H. RUIZ, P.A., will be entitled to the higher of statutory awarded attorney's fees pursuant to Florida and/or Federal law either by statute or contract or a settlement by the defendant of an attorney's fees claim as a result of settlement of fees

2

> pursuant to a State and/or Federal statute authorizing an award of attorney's fees or pursuant to a contract that entitles the undersigned Client to an award of fees whether as an individual claim or as a class action.

DE 1-2 at 3-4.  As a result of these agreements and the legal services rendered, Plaintiffs assert that they have charging liens against disbursements from the QSF. According to Plaintiffs, the disbursements were scheduled to begin on July 15, 2013. DE 1-2 at 2; DE 17 at 2.

The instant action is the second lawsuit in which Plaintiffs have sought a declaration as to the validity of their charging liens.  As way of background, the Court will briefly summarize the procedural history of the prior action as well as the present one.

### A. *La Ley I*

In the first case, filed on June 5, 2013 in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Plaintiffs sued Rust and the Federal Defendants, seeking to enjoin all Defendants from proceeding with the distribution of QSF checks until the court ruled on the validity of Plaintiffs' Charging Liens.  See Law Offices La Ley con John H. Ruiz, P.A., et al v. Rust Consulting, Inc., et al, No. 13-22119-CIV-ALTONAGA/SIMONTON (S.D. Fla., removed June 13, 2013) ("La Ley I"), DE 1-2 ¶¶ 31-32.  Plaintiffs sought a temporary injunction and a declaration that Defendants were obligated to honor Plaintiffs' charging liens, and that the settlement proceeds should be disbursed directly to Plaintiffs.  La Ley I, DE 1-2 at 14, 23.

On June 12, 2013, the state court granted a temporary injunction without notice to Defendants.  See La Ley I, DE 1-3.  The following day, the Federal Defendants

removed the action to this Court, where it was assigned to Judge Cecilia M. Altonaga. See La Ley I, DE 1.  On June 25, 2013, the Federal Defendants moved to dismiss the Complaint, asserting that, pursuant to 12 U.S.C. § 1818(i)(1), neither state nor federal courts have jurisdiction to enjoin distribution of QSF checks.  La Ley I, DE 11 at 11-14. Section 1818(i)(1) provides, in relevant part, that

> except as otherwise provided in this section or under section 1831o or 1831p-1 of this title no court shall have jurisdiction to affect by injunction or otherwise the issuance or enforcement of any notice or order under any such section, or to review, modify, suspend, terminate, or set aside any such notice or order.

On July 12, 2013, Judge Altonaga granted the motion to dismiss, holding that Plaintiffs were asking the Court to modify the Consent Orders, which, under § 1818(i)(1), the Court lacked jurisdiction to do.  La Ley I, DE 38 ("July 12 Order") at 6-7.

### B. *La Ley II*

On July 3, 2013, Plaintiffs filed the instant suit in Florida state court against Defendants John Doe Borrowers and/or Mortgagors Entitled to IFR Payments from Rust Consulting, and/or OCC and/or Federal Reserve Board.  See DE 1-2.  Plaintiffs once again seek a temporary injunction, as well as a declaration that their charging liens are valid and that the settlement proceeds are to be disbursed to Plaintiffs.  Id. at 12-21.

On July 8, 2013, the state court again issued an ex parte temporary injunction. See DE 1-3.  On July 11, 2013, the Federal Defendants removed the action to this Court pursuant to 28 U.S.C. § 1442(a)(1).  In the motion presently before the Court, Plaintiffs move to remand the case, asserting that, because the Federal Defendants are not named parties in this action, they did not have the right to remove it.  Plaintiffs

further requested that the motion be resolved on or before July 17, 2013, a request which the Court denied.  See DE 10.  The Federal Defendants oppose the motion.

## II. LEGAL STANDARDS

"A defendant's right to remove an action against it from state to federal court 'is purely statutory and therefore its scope and the terms of its availability are entirely dependent on the will of Congress.'"  Global Satellite Commc'n Co. v. Starmill U.K. Ltd., 378 F.3d 1269, 1271 (11th Cir. 2004) (quoting 14B Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, Federal Practice and Procedure, § 3721, at 285-86 (3d ed. 1998)).  Removal statutes are strictly construed, with all doubts resolved in favor of remand.  See Miedema v. Maytag Corp., 450 F.3d 1322, 1328-29 (11th Cir. 2006) (citing Burns v. Windsor Ins. Co., 31 F.3d 1092, 1095 (11th Cir. 1994) ("[R]emoval statutes are construed narrowly; where plaintiff and defendant clash about jurisdiction, uncertainties are resolved in favor of remand.")).  "A removing defendant bears the burden of proving proper federal jurisdiction." Leonard v. Enterprise Rent a Car, 279 F.3d 967, 972 (11th Cir. 2002).

Here, the Federal Defendants removed the case based on the federal-agency removal statute, 28 U.S.C. § 1442(a)(1), which provides in pertinent part as follows:

> (a)　　A civil action . . . that is commenced in a State court and that is against or directed to any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:
>
> (1) The United States or any agency thereof . . . .

28 U.S.C. § 1442(a)(1).  Thus, even though the Federal Defendants were not named as parties in this case, they may nonetheless remove the action so long as the case (1)

5

was commenced in state court, and (2) is "against or directed to" the Federal Defendants.  In determining whether an action is against or directed to a federal agency or officer, courts have interpreted the provision broadly "to provide the government with [a] federal forum when a ruling of significant 'potential federal impact [is] at stake.'" Goods v. Hous. Auth. of Balt. City, No. WDQ-10-2293, 2011 U.S. Dist. LEXIS 21055, at *5 (D. Md. Mar. 2, 2011) (quoting Nationwide Investors v. Miller, 793 f.2d 1044, 1047 (9th Cir. 1986)); see also Willingham v. Morgan, 395 U.S. 402, 407 (1969) (cautioning against "a narrow, grudging interpretation of § 1442(a)(1)" that would frustrate the statute's purpose of providing the Federal Government a federal forum).

### III. ANALYSIS

Here, Plaintiffs do not dispute that they have commenced a civil action in state court.  Rather, they argue that there was no basis for removal because the action is not against or directed to the Federal Defendants.  Plaintiffs contend that the only role that Federal Defendants have with regard to the QSF is to perform those "routine acts related to disbursing monies as a trustee."  DE 7 at 13.  Therefore, Plaintiffs assert that the Federal Defendants do not have any interest in the QSF, and the action is not directed toward them.  The Federal Defendants respond that the action is directed against them in two respects.  First, they argue that the suit seeks to restrain them from disbursing QSF funds to eligible borrowers, and to instead distribute the payments to Plaintiffs.  Second, they contend that a judgment for Plaintiffs would establish the Federal Defendants' liability in the event that they direct the payments to the borrowers instead of to Plaintiffs.

As an initial matter, Plaintiffs' description of the Federal Defendants' relationship

to the funds is contrary to Judge Altonaga's findings in her July 12 Order, which stated as follows:

> Under the terms of the [Bank of America] Consent Order, the bank was required to submit a "plan to the OCC, to remediate all financial injury to borrowers . . . by: (a) reimbursing or otherwise appropriately remediating borrowers" for the mortgage servicers misdeeds. Under the [Bank of America] Amendment, the bank was required to make a substantial cash payment into the QSF, from which payments to Eligible Borrowers would "be made pursuant to a distribution plan developed by the OCC and the Board . . . in their discretion." The other Consent Orders and Amendments include similar language. . . .
>
> [T]he Amendments leave the distribution of payments made from the QSF to the discretion of the Federal Defendants. The discretion is not limited but rather allows the Federal Defendants to develop a plan whereby they would send settlement payments from the QSF directly to Eligible Borrowers. This is precisely what the Federal Defendants have done. As a result, should the Court require Rust to pay Plaintiffs directly instead of the Eligible Borrowers, it would affect the enforcement of, and modify the terms of the Consent Orders and Amendments by stamping out the Federal Defendants' discretion to timely disburse funds to borrowers in accordance with the Federal Defendants' plan.

La Ley I, DE 38 at 6-7 (internal citations omitted). Thus, Plaintiffs' contention that the Federal Defendants are responsible only for routine, non-discretionary actions, and do not have any interest in who receives the funds is plainly inaccurate.

Moreover, courts have consistently held that an action is directed against a federal party where the plaintiff attempts to seize funds that are under federal control, or that have been distributed for a federal purpose. See Miller, 793 F.2d at 1046-1047 (finding that a claim to garnish a federal employee's wages was removable under § 1442(a)(1));[1] Palmiter v. Action, Inc., 733 F.2d 1244, 1246 (7th Cir. 1984) (finding that

---

[1] Courts are split on the question of whether garnishment actions concerning federal employees are removable under § 1442(a)(1). Contrast Miller, 793 F.2d at 1046-1047, with Murray v. Murray, 621 F.2d 103, 105-108 (5th Cir. 1980). The Murray

the United States, though not named as a defendant, could remove a case because the proceedings were directed to attaching Head Start funds that had been distributed to a non-governmental entity); Fernandez v. Huerfano & Las Aminas Cntys. Head Start Policy Council, Inc., No. 90-A-540, 1990 WL 126195, at *2 (D. Colo. Aug. 14, 1990) (citing Palmiter, and finding that an action to levy on Head Start funds was properly removable by the Secretary of Health and Human Services); see also United States HUD v. K. Capolino Constr. Corp., 01 Civ 390 (JGK), 2001 U.S. Dist. LEXIS 5825, at *12 (S.D.N.Y. May 7, 2001) ("The United States has an interest in federal funds disbursed to a non-governmental entity for a federal purpose . . . .").[2]  For purposes of § 1442(a)(1), "[f]unds may be federal when they are 'governed by pervasive federal legislation and regulations which specif[y] the purposes for which the funds [may] be used.'"  Goods, 2011 U.S. Dist. LEXIS 21055, at *6 (quoting Palmiter, 733 F.2d at 1247).

---

court, in finding that the case was not removable, stressed that the purpose of § 1442 (a)(1) was to provide for removal "in those actions commenced in state court that could arrest, restrict, impair, or interfere with the exercise of federal authority by federal officials."  The court noted that the garnishment proceeding at issue "does not purport to expose the United States to any liability beyond its acknowledged and accepted obligation to pay monthly disability benefits of $922.00."  621 F.2d at 107.  In the instant case, however, the Federal Defendants have discretion in the disbursement of funds, which Plaintiffs' claims seek to cabin.  Thus, unlike in Murray, the present action purports to interfere with the exercise of federal authority, and to affect the Federal Defendants' liabilities beyond their preexisting legal duties.

[2] Plaintiffs rely upon Adams v. Adminastar Defense Services, Inc., 901 F. Supp. 78, 79 (D. Conn. 1995), for the proposition that a federal agency not named as a defendant may not remove a case under § 1442(a)(1).  At the time Adams was decided, however, only federal officials, not federal agencies, could remove actions under the statute.  Subsequently, Congress revised the statute to extend removal authority to federal agencies.  See H.R. Rep. No. 104-798 (1996), 1996 WL 532692, at *3.

In this case, Plaintiffs seek to impose charging liens on money that is or was held by the Federal Defendants, and is subject to disbursement at the Federal Defendants' discretion.[3]  The Federal Defendants clearly have a substantial interest in the disposition of funds that they both hold and control.  Additionally, as Plaintiffs acknowledge, if the liens are declared valid and the Federal Defendants' wrongly paid QSF proceeds to the borrowers, the Federal Defendants may be held liable for the amount of the borrowers' attorney's fees and costs.  DE 7 at 16 (citing Zalvidar v. Okeelanta, 877 So. 2d 927, 930 (Fla. 1st DCA 2004)).  Therefore, because this suit attempts to (1) attach funds controlled by the Federal Defendants, (2) restrict the Federal Defendants' lawful discretion in distributing the funds, and (3) expose the Federal Defendants to civil liability for having disbursed the funds, the Court finds that the action is against or directed to the Federal Defendants, and therefore removable under § 1442(a)(1).  Accordingly, the motion will be denied.

## IV. CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED AND ADJUDGED** that Plaintiffs' Motion for Remand and for Expedited Determination No Later than July 17, 2013 [DE 7] is **DENIED**.

---

[3] As the Federal Defendants note in their pending Motion to Dismiss Plaintiffs' Complaint [DE 21], Plaintiffs allege that they have valid charging liens against "the IFR settlement proceeds," rather than merely the disbursements sent to Defendant John Doe Borrowers.  DE 21 at 5 n.5.  Thus, even if the Borrowers have already received their funds, the liens, if valid, would apply against any remaining IFR settlement proceeds.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, on this 23rd day of August, 2013.

JAMES I. COHN
United States District Judge

Copies provided to:
Counsel of record via CM/ECF.